IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEROY MCBRIDE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of the U.S. Social )<br>Security Administration, )<br>)<br>Defendant. )<br>) | No. 16 CV 9487<br><br>Magistrate Judge Michael T. Mason |

## MEMORANDUM OPINION AND ORDER

Plaintiff Leroy McBride ("Claimant") seeks reversal of the final decision of the Commissioner of Social Security ("Commissioner"), finding that his disability ended on August 1, 2011. The Commissioner asks the Court to uphold the decision of the Administrative Law Judge ("ALJ"). For the reasons set forth below, Claimant's request for summary judgment (Dkt. 14) is denied and the Commissioner's request for summary judgment (Dkt. 21) is granted.

**I. Background**

    **A. Procedural History**

In a previous determination by an ALJ, Claimant was found to be disabled and entitled to Supplemental Security Income ("SSI") as of October 13, 2006 due to Listing level asthma. (R. 20, 101.) On August 31, 2011, following a periodic review of Claimant's disability, the Social Security Administration ("SSA") determined that Claimant's condition had improved, and his disability had ended as of August 1, 2011. (R. 100, 103-105.) This determination was upheld at the reconsideration level following

a hearing by a Disability Hearing Officer. (R. 109-120, 125-132.) Claimant then requested a hearing before an ALJ, which was first held on August 5, 2013. (R. 39-53.) A second hearing was held on January 15, 2015. (R. 54-93.) On April 1, 2015, the ALJ issued a written decision, affirming the decision that Claimant's disability ended on August 1, 2011. (R. 17-38.) On August 8, 2016, the Appeals Council denied Claimant's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1-7.) This action followed.

### B. Relevant Medical Evidence

#### 1. Treating Physicians

Claimant was previously granted benefits in 2006 for Listing level asthma. The medical records from that time period indicate that Claimant suffered from asthma, nasal polyps, and recurring sinusitis. (R. 453, 465-66.)

Claimant has an extensive history of ER visits for asthma and sinus related concerns, along with multiple hospital admissions, which span 2007-2013. (R. 318-473.) Claimant had multiple scans and tests run during these hospital visits, and in May of 2010, a CT scan showed chronic sinus disease. (R. 715-16.) Subsequent scans revealed pansinusitis in September and October of 2010, which had progressed noticeably by a scan in July of 2011. (629, 635.)

The record further reveals that Claimant followed up with a family practitioner after his ER visits and hospital admissions, and also had routine check-up exams. Dr. Suraj Pazhoor reported that Claimant was discharged from the hospital after his symptoms were controlled, he had mild sinus tenderness, clear lungs, and non-labored respirations, that he did not complain of shortness of breath, and that he was

2

asymptomatic at some of his appointments. (R. 840, 843.) Further, on December 7, 2011, Dr. Pazhoor noted that Claimant was not being compliant with his medications (specifically Qvar, Singulair, and Loratadine). (R. 851.) Claimant was counseled on the importance of taking all his medications as prescribed to avoid acute attacks. (R. 851.) Claimant was referred by Dr. Pazhoor to an ENT specialist to treat his chronic sinusitis, and he had a tube placed in his right ear at an outpatient appointment. (R. 857.) Claimant also visited an ambulatory clinic in November of 2011, where he was found to have expiratory wheezes, which improved after a nebulizer treatment. (R. 849.)

Claimant reports that he visited the emergency room four times in 2012, but was discharged after a breathing treatment each time. (654-58.) Following his discharge in March of 2012, Claimant went to the asthma clinic, where the treating pulmonologist switched one of his medications to Symbicort. (R. 854-55.) However, Claimant did not fill this medication until August of 2012. (R. 308.)

In more outpatient clinic notes from December of 2012, Dr. Ayanna McKinnon, noted that Claimant's sinus concerns were growing more serious. (R. 864, 629.) On May 16, 2013, Claimant underwent a second surgery to remove nasal polyps. (R. 834.) Notes from his pre-operation pulmonary check once again indicate he was not compliant with his medications. (R. 1205.) Claimant visited a pulmonology clinic in August of 2013, where he was seen regularly by a variety of doctors. At this visit, he reported that he had been to the ER "4-5 times" in the past year, but that he had been doing well for the last two weeks and had not needed his Albuterol during that time. (R. 1157.) Further, his exercise tolerance was listed as "unlimited." (R. 1157.) At this visit, he tested positive for allergies to cats, and although he had given away two cats, there

3

were still cats in the house. (R. 1159.) Claimant was warned to take appropriate measures to avoid exposure to the cats as his health could worsen if he did not. (R. 1160.) Various doctors and clinicians also noted that claimant was not consistently compliant with all of his medications in 2013 and 2014, including failing to comply with nasal sprays, saline irrigation, using his BiPAP machine, and asthma and blood pressure medication. (R. 1101, 1186, 1189, 1191, 1196.)

Claimant saw Dr. Kathy Sonenthal, in September of 2013 at the asthma clinic. (R. 1161.) At this visit, he complained of worsening sinus symptoms. (R. 1161.) Dr. Sonenthal opined that his asthma was under control, but that he appeared to have a sinus infection. (R. 1163.) The next few months showed that his exercise tolerance was stable, that was staying at baseline with his medications, and that he still had a cat in the house. (R. 1165, 1169, 1173, 1177, 1181, 1194.) In February 2014, in a review of previous visits, Dr. Sonenthal noted that Claimant lived with smokers and needed to avoid cigarette smoke above all else. (R. 1169.) The next few visits to the clinic reveal that he was still being exposed to smoke and cats, and Dr. Sonenthal repeatedly indicated that he needed to stay away from both. (1173, 1180.)

Dr. Anne Krantz was part of the team of Claimant's treating pulmonologists from the Cook County Health and Hospital System. On February 14, 2014, Dr. Krantz opined that claimant had workplace restrictions and should not be exposed to cleaners, irritants, and dust. Dr. Krantz further opined that Claimant might have frequent bad asthma days, which might lead to absenteeism or an inability to do heavy exertion. (R. 737.) However, she indicated in her treatment notes from the same day that Claimant had not visited the emergency room since 2012, and that his decision to keep a cat in

4

the house revealed he may be putting cat ownership before his health. (R. 1148.) Dr. Krantz's only note about absenteeism is from Claimant's self-report that he has too many bad asthma days and could not continue his job due to absenteeism. (R. 1146.)

### 2. Agency Physicians

In August of 2011, Claimant underwent an internal medicine consultative exam with Dr. Jeffery J. Ryan. (R. 670.) He described a history of asthma, chronic sinusitis, high blood pressure, and intermittent dizziness. A physical exam showed that Claimant's respirations were unlabored, although rare wheezes could be heard in the posterior lung fields. (R. 671.)

Also in August of 2011, reviewing physician Dr. James Hinchen opined that Claimant suffered from non-Listing level asthma. Specifically, Dr. Hinchen opined that Claimant should never climb ladders/ropes/scaffolds, and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, unprotected hazards, and hazardous machinery. (R. 681, 873.) Further, he opined that Claimant could lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk about 5 hours in an 8 hour workday; and sit about 6 hours in an 8 hour work day. (R. 680.) In Dr. Hinchen's opinion, Claimant's asthma had improved since the previous decision awarding benefits and was now under control. (R. 686.) Dr. Julio Pardo affirmed this opinion at the reconsideration level in November of 2011. (R. 727-734.)

### C. Claimant's Testimony

Claimant appeared at both hearings without counsel and offered the following testimony. At the time of the second hearing, Claimant was 40 years old and living with his girlfriend, his cousin, and his girlfriend's three adult children. (R. 62.)

5

Claimant explained that he has balance issues due to his sinusitis, and his continued sinus problems clog his ears. (R. 65.) Claimant also stated that when he gets sick, he is sick for a long period of time. (*Id.*) Further, claimant testified that he continues to get sinus infections despite his surgeries and medications. (R. 68.) He claimed he is able to stand and sit comfortably for two hours. (R. 67.) He also exercises regularly as recommended by his physician, completing 30 minutes to an hour of walking each day. He avoids running as it aggravates his asthma. Claimant also uses weights for 15 minutes twice a week. (R. 64-65.) When asked if things had gotten better or worse since the last hearing, Claimant reported that his condition had not gotten any better and had gotten a little bit worse. (R. 69.)

### D. Medical Expert Testimony

A medical expert ("ME) also appeared at the hearing. Dr. Ronald Semerdijian asserted that Claimant's records do not document the requisite frequency of asthma exacerbations requiring physician intervention or inpatient hospitalization, and his pulmonary function testing shows functioning that does not meet the Listing level. (R. 73-85.) He further opined that Claimant was capable of lifting or pulling twenty pounds occasionally and ten frequently, but that he would need to stay away from unprotected heights, avoid extremes of cold and heat, and avoid environments with even a moderate concentration of dust, fumes, or particulate matter. (*Id.*)

### E. Vocational Expert Testimony

Vocational Expert ("VE") Edward Pagella also appeared at the hearing. Based on a hypothetical posed by the ALJ (describing someone with the RFC indicated by the ME), the VE testified that such an individual could work as a cashier, mall clerk, fast

food clerk, or office clerk. (R. 85-89.) The VE further testified that if an individual were to be off task more than 15 percent of the time, he could not sustain employment in those jobs. (*Id.*) Moreover, if an individual missed more than one and a half days per month, he would likely be terminated. (*Id.*) Lastly, the VE agreed that without proper ventilation, the fast food clerk job would likely aggravate Claimant's asthma. (*Id.*)

When provided a hypothetical with the same limitations, but further limited to sedentary work, the VE testified that the individual could work as a telephone quotation clerk, a sorter, and an order clerk. (R. 89-91.) The rest of the limitations regarding off-task time and absences would remain the same. (*Id.*)

## II. Analysis

### A. Standard of Review

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). We must consider the entire administrative record, but will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). This Court will "conduct a critical review of the evidence" and will not let the Commissione's decision stand "if it lacks evidentiary support or an

adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (quoting *Steele*, 290 F.3d at 940).

In addition, while the ALJ "is not required to address every piece of evidence," he "must build an accurate and logical bridge from evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must "sufficiently articulate [his] assessment of the evidence to assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

### B. Analysis under the Social Security Act

To be eligible for SSI disability benefits, a claimant must be disabled under the Social Security Act. A claimant is disabled if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of no less than twelve months." 42 U.S.C.A. § 1382c(a)(3)(A). After the SSA determines that a claimant is disabled, it must evaluate the claimant's impairments "from time to time" to determine if the claimant remains eligible for benefits. 20 C.F.R. § 416.989. When determining a claimant's continued eligibility for benefits, the SSA must consider whether there has been any "medical improvement" in the claimant's impairments and, if so, whether the improvement is related to the ability to work. 20 C.F.R. § 416.994. In addition, the SSA must establish that the claimant is able to engage in substantial gainful activity before determining he is no longer disabled. *Id.* To make these determinations, ALJs are expected to follow an eight step process laid out in 20 C.F.R. § 416.994(b)(5).

Here the ALJ applied the eight-step process when assessing whether Claimant continued to be disabled and entitled to SSI. Before doing so, the ALJ acknowledged that at the time of the "comparison point decision," Claimant suffered from Listing level impairments of asthma and sinusitis. (R. 22.) Then, at step one, the ALJ determined that Claimant had not engaged in substantial gainful activity. (*Id.*) At step two, the ALJ concluded that the Claimant had the following medically determinable impairments: asthma; sinusitis; nasal polyps; allergies; and hypertension. (*Id.*) According to the ALJ, the impairments did not meet or medically equal any of the Listings. (*Id.*)

At steps three and four, the ALJ found that medical improvement occurred as of August 1, 2011, which was related to the ability to work. (R. 22-23.) Specifically, the ALJ concluded that Claimant's impairments were under better control and required fewer hospitalizations and emergency room visits; that clinical examinations were generally normal and revealed fewer abnormalities; and that pulmonary function test results were not at Listing level. (*Id.*) The ALJ properly jumped to step six and found that Claimant continued to suffer from severe impairments of asthma, sinusitis, nasal polyps, and allergies that caused more than minimal limitations in his ability to perform basic work activities. (R. 23.)

The ALJ went on to assess Claimant's RFC, finding Claimant could perform sedentary work except that Claimant can lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk 2 hours; sit 6 hours; never climb ropes/ladders/scaffolds and can frequently climb ramps/stairs; must avoid even moderate exposure to pulmonary irritants such as dusts and fumes, extreme cold/heat, humidity, and workplace hazards; and must avoid exposure to unprotected heights. (R.

9

23.) Finally, the ALJ found that the claimant was unable to perform past relevant work, but could perform work in the national economy, including in the positions of telephone quotation clerk, sorter, and order clerk. (R. 31.)

Claimant now argues that the ALJ's decision is not supported by substantial evidence and requires remand. Specifically, Claimant argues that the ALJ improperly assessed McBride's credibility, and improperly rejected treating pulmonologist Dr. Krantz's opinion that Claimant may have frequent absenteeism as a result of his asthma. We address each of Claimant's arguments in turn below, ultimately finding that the ALJ's opinion should be affirmed.

**C. The ALJ's Opinion is Supported by Substantial Evidence and Free From Legal Error.**

**1. The ALJ's credibility assessment was proper and comported with SSR 96-7p.**

Claimant takes issue with the ALJ's evaluation of Claimant's credibility in reporting his symptoms. According to Claimant, the ALJ did not follow SSR 96-7p in her discussion of his credibility and relied too heavily on his activities of daily living in dismissing portions of his testimony. The Court disagrees.

Under SSR 96-7p, the ALJ must first determine whether the Claimant has a medically determinable impairment that could reasonably be expected to produce his symptoms.[1] SSR 96-7p, 1996 WL 374186 at *2. Then, the ALJ must evaluate the

---

[1] Since the ALJ issued his decision in this case, the SSA has issued new guidance on how the agency assesses the effects of a claimant's alleged symptoms. SSR 96-7p and its focus on "credibility" has been superseded by SSR 16-3p in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1. However, the SSA recently clarified that Courts should only apply SSR 16-3 to determinations made on or after March 28, 2016. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). Here, we continue to assess the ALJ's findings under SSR

10

"intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. *Id.* at *6. In determining the ability of the Claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. *Id.* at 4.

SSR 96-7p requires the ALJ to consider the following factors in addition to the objective medical evidence: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness and side effects of medication; (5) any treatment, other than medication, for relief of pain or other symptoms; (6) any measure the claimant uses to relieve the pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 WL 374186 at *3. The Court will only reverse the ALJ's credibility finding if it is "patently wrong." *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). The ALJ's credibility determination is patently wrong if it lacks "any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

In assessing Claimant's symptoms and allegations of severe asthma, the ALJ properly followed the requirements of SSR 96-7p. First, although the ALJ did cite to Claimant's activities of daily living in discrediting some of the alleged limitations, the ALJ

---

96-7p, which notably is not "patently inconsistent" with SSR 16-3. *Shered v. Berryhill*, 16 CV 50382, 2018 WL 1993393, at *5 (N.D. Ill. April 27, 2018) (internal quotations omitted).

11

did not improperly equate the ability to complete such activities with the ability to engage in full-time work. Rather, the ALJ discussed how Claimant's activities of daily living (including his exercise regime), along with objective medical evidence showing improvement and stability, conflicted with his reports of severely limiting asthma. (R. 28.)

Second, Claimant argues that the ALJ improperly relied on Claimant's non-compliance with medical treatments, as well as his failure to avoid the asthma triggers of cats and smoke. An ALJ may consider evidence of non-compliance with medical advice when assessing credibility. SSR 96-7p states that:

> the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

1996 WL 374186, at *7.

Here, the ALJ properly noted that Claimant had a history of non-compliance with medications and medical treatments. The ALJ pointed to multiple instances of Claimant failing to comply with medications, such as Qvar, Singulair, Loratadine, Symbicort, Enalapril, Flonase, and blood pressure medications. (R. 308, 851, 1126, 1186, 1189, 1196.) Further, the record also revealed a history of failing to comply with treatments, such as saline irrigations and using his biPAP machine. (R. 1101, 1189, 1191.) The ALJ opined that Claimant's periods of being symptomatic often lined up with non-compliance with meds, such as sinus symptoms worsening when failing to comply with

12

Flonase and saline irrigations. (R. 27, 1189.) Claimant argues that the ALJ otherwise ignored periods of time where he was compliant with medications and was still symptomatic. However, the ALJ properly averred that it may be the combination of non-compliance with medications and living in a house with smokers and cats that exacerbates his symptoms, which the medical evidence corroborates. (R. 27-28.)

Claimant also argues that the ALJ used his living situation against him. Claimant was repeatedly counseled by his pulmonologists and other treating physicians to stop living with smokers and cats, yet continued to do so. (R. 1159, 1160, 1169, 1173, 1180, 1148.) While Claimant argues that these are problems outside of his control (as he lives in his girlfriend's house), the Court sees no error in the ALJ's reliance on Claimant's living situation as simply one of many factors used in assessing Claimant's limitations.

Lastly, although the ALJ did not appear to explore any potential reasons for Claimant's non-compliance, Claimant cites to none in the record or otherwise. Where, as here, the ALJ's credibility assessment is supported by the record as a whole, any error in exploring potential reasons for a lack of medical compliance is harmless, and the Court cannot say that the assessment was patently wrong.

### 2. The ALJ did not err in the treatment of Dr. Krantz's medical opinion regarding Claimant's absenteeism.

Claimant also argues that the ALJ improperly gave little weight to treating physician Dr. Krantz's assertion that Claimant has "frequent bad asthma days which would lead to absenteeism." (Dkt. 14 at 13-14.) Claimant claims that the ALJ's reasons for rejecting the opinion are insufficient. (*Id.*) The Court disagrees.

A treating physician's opinion receives controlling weight if it is "well-supported" and "not inconsistent with the other substantial evidence" in the record. *See* 20 C.F.R. § 416.927(c)(2); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). An ALJ must offer "good reasons" for discounting the opinion of a treating physician. *See Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011). If an ALJ denies a treating physician's opinion controlling weight, she is still required to determine what value it merits. *See* 20 C.F.R. § 416.927(c); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). In assigning that value, the ALJ must "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion."[2] *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); 20 C.F.R. § 416.927(c).

Here, the ALJ gave significant weight to the majority of Dr. Krantz's opinion. The only portion given little weight is the sentence regarding absenteeism. (R. 29.) The ALJ based this on the fact that Dr. Krantz's treatment note from the day of the statement indicated this was Claimant's own allegation and not a medically based observation. (R. 1146.) Further, the ALJ used the objective medical evidence to note that there was no evidence that Claimant would in fact frequently be absent from work. (R. 27-29.) If the treating physician's opinion is based "solely on the patient's subjective complaints, the ALJ may discount it." *Ketelboeter v. Astrue*, 550 F.3d 209, 212 (7th Cir. 2008). Where there is no indication that Dr. Krantz came to the conclusion at issue apart from Claimant's subjective complaints, the ALJ's analysis was proper.

---

[2] The SSA recently adopted new rules for agency review of disability claims involving the treating physician rule. See 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. (*Id.*)

14

## III. Conclusion

For the foregoing reasons, Claimant's request for summary judgment is denied, and the Commissioner's request for summary judgment is granted. The decision of the ALJ is affirmed. It is so ordered.

_____
**The Honorable Michael T. Mason
United States Magistrate Judge**

**DATED: July 9, 2018**